**ORTHODONTIC AFFILIATES, P.C., Appellant–Plaintiff,**

v.

**Shawn R. LONG, D.D.S., Appellee–Defendant.**

**No. 46A04–0503–CV–147.**

Court of Appeals of Indiana.

Jan. 30, 2006.

---

Mark A. Lienhoop, Kristina J. Jacobucci, Newby Lewis Kaminski & Jones, LLP, LaPorte, for Appellant.

Michael A. Wilkins, Ice Miller, Indianapolis, for Appellee.

## OPINION

MAY, Judge.

Orthodontic Affiliates, P.C., appeals summary judgment for Shawn R. Long, its former employee. Orthodontic Affiliates raises three issues, which we consolidate and restate as whether the trial court erred in granting summary judgment for Long. We affirm.

## FACTS AND PROCEDURAL HISTORY

Orthodontic Affiliates entered into an employment contract with Long, who is an orthodontist, on June 17, 1999. The term of the contract was five years, from July 1, 1999 to June 30, 2004. Paragraph 7 addressed termination of the contract:

7. *TERMINATION.* This Employment Contract shall be terminated immediately upon the occurrence of any one of the following events:

a. If Employee's license to practice dentistry in the State of Indiana is suspended for a period in excess of thirty (30) days or is revoked;

b. If Employee is elected to a public office or accepts employment that, pursuant to law, places restrictions or limitations upon his continued rendering of professional services as an orthodontist;

c. If Employee makes an assignment for the benefit of creditors, or files a voluntary petition in bankruptcy or is involuntarily adjudicated a bankrupt, provided such occurrence affects or in any way becomes binding upon the assets of the Employer;

d. If Employee shall neglect his duties or devote a significant part of his time or attention to other interest, or conducts himself in a manner inimical to the best interests of the Employer, the Employer shall notify the Employee, in writing, of the objectionable act and if

such objectionable act occurs again, at its option, the Employer may terminate this Agreement;

    e. In the event the Employee shall be guilty of fraud, dishonesty or other acts of misconduct in the rendering of professional services on behalf of the Employer;

    f. In the event the Employee shall fail or refuse to faithfully or diligently perform the provisions of the Agreement or the usual and customary duties of an orthodontist.

In the event of termination under any of the above provisions, the salary, plus accrued vacation time and any other accrued benefits, which may be due to Employee to the date of such termination shall be full compensation in payment for all claims under this Agreement and shall be paid to Employee within fourteen (14) days after said termination date.

(App. of Appellant at 147–48.) The contract also referred to a contemplated agreement that would allow Long to become a one-third partner in the practice in July 2000.

Long sent Orthodontic Affiliates a letter by certified mail dated January 25, 2000, which stated: "Please consider this my notice of termination pursuant to paragraph 7(f) of the Employment Agreement effective March 31, 2000. Please be further advised that upon my termination I will be conforming with all restrictions provided in paragraph 8 relative to 'Partial Restraint on Post Termination Competition.' " (*Id.* at 152.)

Orthodontic Affiliates responded to Long by letter on January 31, 2000. The letter acknowledged receipt of "your letter giving notice of your unilateral termination." (*Id.* at 153.) Orthodontic Affiliates further stated that "after consultation with our legal counsel . . . we emphatically refuse to accept your unilateral termination." (*Id.*)

On February 7, 2000, Orthodontic Affiliates sought a declaratory judgment that Long had breached the contract.[1] Both parties moved for partial summary judgments regarding Long's unilateral termination of the contract, which were initially denied. After mediation efforts failed, the trial court set the matter for trial. It then, *sua sponte,* reset the trial and ordered the parties to re-argue their motions for summary judgment on January 24, 2005. The trial court granted partial summary judgment in favor of Long on January 28, 2005. The trial court certified its order for interlocutory appeal, and we granted Orthodontic Affiliates' motion to accept jurisdiction over its interlocutory appeal.

### DISCUSSION AND DECISION

    ■ Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). When reviewing a grant of summary judgment, we apply the same standard as does the trial court. *Rogier v. Am. Testing & Eng'g Corp.,* 734 N.E.2d 606, 613 (Ind.Ct.App.2000), *trans. denied* 753 N.E.2d 8 (Ind.2001). We do not weigh the evidence; rather, we consider the facts in the light most favorable to the nonmovant. *Id.* Although the trial court's grant of summary judgment is clothed with a presumption of validity, we carefully scrutinize the trial court's decision to ensure the

---

1. Although Orthodontic Affiliates' initial complaint asserted only Long's unilateral termination as breaching the contract, it later asserted additional acts by Long constituted breach for which Long was liable.

nonmovant was not improperly denied his day in court. *Id.*

Generally, the construction of a written contract is a question of law for which summary judgment is particularly appropriate. *City of Lawrenceburg v. Milestone Contractors, L.P.,* 809 N.E.2d 879, 883 (Ind.Ct.App.2004), *trans. denied* 822 N.E.2d 978 (Ind.2004). However, if the terms of a written contract are ambiguous, it is the responsibility of the trier of fact to ascertain the facts necessary to construe the contract. *Id.* Consequently, when summary judgment is granted based upon the construction of a written contract, the trial court has either determined as a matter of law that the contract is not ambiguous or uncertain, or that any ambiguity can be resolved without the aid of a factual determination. *Id.*

Construction of the terms of a written contract is a pure question of law; thus, our standard of review is *de novo. Allstate Ins. Co. v. Bradtmueller,* 715 N.E.2d 993, 996 (Ind.Ct.App.1999), *trans. denied* 735 N.E.2d 228 (Ind.2000). The unambiguous language of a contract is conclusive on the parties to the contract and on the courts. *Id.* If the language of the instrument is unambiguous, the intent of the parties is determined from the four corners of that instrument. *Id.* If, however, a contract is ambiguous or uncertain, its meaning is to be determined by extrinsic evidence and its construction is a matter for the fact-finder. *Id.*

In interpreting a written contract, we attempt to determine the intent of the parties at the time the contract was made as evidenced by the language used to express their rights and duties. *Id.* The contract is to be read as a whole and we will construe the language in a contract so as not to render any words, phrases, or terms ineffective or meaningless. *Id.* An interpretation of the contract that harmonizes its provisions is favored over one that causes the provisions to conflict. *Id.* Moreover, in the absence of anything to indicate a contrary intention, writings executed at the same time and relating to the same transaction or subject matter will, as a general proposition, be construed together. *Id.*

The trial court determined Paragraph 7(f) "is not ambiguous and . . . creates the ability for [Long] to terminate the Agreement by simply refusing to work." (App. of Appellant at 6.) Both parties agree the language of Paragraph 7(f) is not ambiguous. Nevertheless, each arrives at a different conclusion regarding the meaning of the paragraph.

Orthodontic Affiliates argues: "Interpreting the intent of the parties from the four corners of the contract, as the rules of contract interpretation require, reveals that the contractual terms do not allow Dr. Long to terminate the employment contract without cause." (Appellant's Br. at 13.) Thus, Orthodontic Affiliates asserts, Long's decision to stop working was a breach of the contract for which he may be required to pay damages.

Long responds the parties "specifically agreed that Dr. Long's failure or refusal to perform his duties would result in a **termination** of the contract, not a breach." (Appellee's Response Br. at 6) (emphasis original).

The termination or cancellation of a contract differs from a breach of contract. When a contract is terminated, neither party owes any further duties or obligations to the other. *Mortgage Credit Serv., Inc. v. Equifax Credit Info. Servs., Inc.,* 766 N.E.2d 810, 813 (Ind.Ct.App. 2002). When one party breaches a contract, however, that party may be required to compensate the other for damages resulting from that breach. *Epperly v.*

*Johnson,* 734 N.E.2d 1066, 1073 (Ind.Ct. App.2000).

The language of Paragraph 7 unambiguously classifies Long's failure or refusal to perform the provisions of the contract as a contract termination event and not as a contract breach event. Accordingly, the contract would terminate under the terms of Paragraph 7(f) if Long "fail[ed] or refus[ed] to faithfully or diligently perform the provisions of the Agreement or the usual and customary duties of an orthodontist." (App. of Appellant at 147–48.) Long's letter expresses his refusal to work for Orthodontic Affiliates past March 31, 2000, resulting in termination of the contract.

The language of Paragraph 7 is not ambiguous and the contract between Long and Orthodontic Affiliates was properly terminated by Long's letter.[2] Because there are no genuine issues of material fact and Long was entitled to judgment as a matter of law on this issue, the trial court did not err in granting partial summary judgment in Long's favor. Accordingly, we affirm.

Affirmed.

KIRSCH, C.J., and ROBB, J., concur.

2. Orthodontic Affiliates suggests two alternative reasons the trial court committed reversible error. First, Orthodontic Affiliates argues any patent ambiguities in the contract must be resolved in its favor in order to harmonize all of its provisions. Second, Orthodontic Affiliates argues the proper interpretation of any latent ambiguities requires extrinsic evidence and summary judgment is thus inappropriate. As the contract was not ambiguous, we need not address Orthodontic Affiliates' alternative arguments.