ARROTIN PLASTIC MATERIALS
OF INDIANA, Appellant,

v.

WILMINGTON PAPER
CORP., Appellee.

No. 02A04–0609–CV–512.

Court of Appeals of Indiana.

May 9, 2007.

———

Shane C. Mulholland, Burt Blee Dixon Sutton & Bloom, LLP, Fort Wayne, IN, Attorney for Appellant.

Michael L. James, M. Kristin Glazner, Brian P. Clifford, Baker & Daniels, LLP, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Arrotin Plastic Materials of Indiana ("Arrotin") appeals the trial court's denial of its cross-motion for summary judgment and the grant of summary judgment in favor Wilmington Paper Corp. ("Wilmington"). We affirm.

### Issue

Arrotin raises one issue, which we restate as whether the trial court properly concluded that Wilmington did not breach the agreement with Arrotin.

### Facts

In the fall of 2003, Arrotin and Wilmington negotiated the sale of scrap plastic materials to Arrotin. The document they executed on Arrotin letterhead provided in substantive part:

RE: contract of Service # WILPA-PER9393

Dear James,

We are pleased to purchase the following materials you have available for sale with the following terms and conditions

Material

1) ALL HDPE injection grade any color regrind
2) ALL HDPE injection grade any color unground or purgings
3) ALL PP injection grade any color regrind
4) ALL PP injection grade any color unground or purgings
5) ALL LDPE injection grade any color regrind
6) ALL LDPE injection grade any color unground or purgings
7) ALL HIPS injection or extrusion grade any color regrind
8) ALL HIPS injection or extrusion grade any color unground or purgings
9) ALL Contaminated materials any type of materials and any color

*All material to be packaged in gaylord boxes on pallets. Arrotin Plastics will also provide a certificate of destruction on all materials shipped. Arrotin Plastics would like to thank you for the opportunity to quote on the above mentioned materials.

Terms and conditions of purchase:

Arrotin Plastic Materials, Inc. would like to have terms of net 40 days. Seller to guarantee all materials to be free of contamination (IE No commingled [sic] between material types) unless noted above. Buyer to provide all necessary trucking arrangements. Buyer to provide trailer spotted with lock on Huhtamaki Plastics premises for the storage and accumulation of items of purchase. Trailer to be exchanged within 48 hrs of notification from seller. Buyer to provide seller with weight verification within 48 hrs of receipt of materials. Contract of service would be for a period of one year. Contract will automatically renew for the periods of one year unless either party shall have given 60 day notice of termination in writing: via certified mail, at the end of the primary term or successive term thereafter. Items of purchase to be made available on or around August 06, 2003. Pricing may be renegotiated every 3 months based upon current market conditions at

the time of renegotiating pricing. Price changes must be verifiable via third party publications such as Plastics New, Modern Plastics, Plastics Technology, etc. If all is agreed to please sign and fax back to me ... or if you have any questions please feel free to contact me at....

App. p. 87 (price per pound omitted). James Rokuson of Wilmington "Agreed and accepted" these terms. *Id.* Wilmington then sold one truckload of materials to Arrotin and refused to ship more.

On March 26, 2004, Arrotin filed a complaint based on the alleged breach. On April 27, 2006, Wilmington moved for summary judgment. On June 30, 2006, Arrotin filed a response and a cross-motion for summary judgment, to which Wilmington replied and responded. After a hearing, the trial court granted Wilmington's motion for summary judgment and denied Arrotin's cross-motion for summary judgment. Arrotin now appeals.

### Analysis

On appeal from the grant of summary judgment, we face the same issues that were before the trial court and follow the same process. *Schaefer v. Kumar*, 804 N.E.2d 184, 191 (Ind.Ct.App.2004), *trans. denied*. Summary judgment is appropriate only where the designated evidence shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.;* Ind. Trial Rule 56(C). "A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue." *Schaefer*, 804 N.E.2d at 191.

On appeal, we consider only the matters designated to the trial court. *Id.* We do not weigh the evidence, and we liberally construe all designated evidence in the light most favorable to the nonmoving party. *Id.* "A grant of summary judgment may be affirmed on any theory supported by the designated materials." *Id.*

■ "Generally, the construction of a written contract is a question of law for which summary judgment is particularly appropriate." *Orthodontic Affiliates, P.C. v. Long*, 841 N.E.2d 219, 222 (Ind.Ct.App. 2006). If the terms of a written contract are ambiguous, however, the trier of fact must ascertain the facts necessary to construe the contract. *Id.* "Consequently, when summary judgment is granted based upon the construction of a written contract, the trial court has either determined as a matter of law that the contract is not ambiguous or uncertain, or that any ambiguity can be resolved without the aid of a factual determination." *Id.*

■ On appeal, we apply the same standard of review as the trial court, that is, unless the terms of the contract are ambiguous, they will be given their plain and ordinary meaning. *Four Winds, LLC v. Smith & DeBonis, LLC*, 854 N.E.2d 70, 74 (Ind.Ct.App.2006), *trans. denied*. Where the terms of a contract are clear and unambiguous, they are conclusive, and we will not construe the contract or look to extrinsic evidence, but will merely apply the contractual provisions. *Id.* "The terms of a contract are not ambiguous merely because the parties disagree as to the proper interpretation of the terms." *Id.* "A contract is ambiguous only where a reasonable person could find its terms susceptible to more than one interpretation." *Cummins v. McIntosh*, 845 N.E.2d 1097, 1104 (Ind.Ct.App.2006), *trans. denied*. If the language of a contract is unambiguous, the intent of the parties is determined from the four corners of the document. *Id.*

■ Arrotin argues that the document's language clearly and unambiguously creat-

ed a valid output contract based on the term "ALL." App. p. 87. An output contract is "[a] contract in which a buyer promises to buy all the goods or services that a seller can supply during a specified period at a set price." *Black's Law Dictionary*, 323 (7th ed.1999). Although we agree that Indiana Code Section 26–1–2–306[1] permits parties to enter into output contracts, we do not believe the term "ALL" as contained in this document applied to the quantity of materials that Wilmington would sell to Arrotin. App. p. 87. Instead, we conclude that the term "ALL" was used to describe the materials available for sale. *Id.* That is, each category of material was to be "ALL" of that type, not some combination of types. *Id.*

We reach this conclusion based on several considerations. First the term "ALL" is included in the list of "Material" and immediately precedes the specific types of material. *Id.* Further, under the "Terms and conditions of purchase," Wilmington is "to guarantee all materials to be free of contamination (IE No commingled [sic] between material types)...." *Id.* Thus, we conclude that Arrotin wanted each category of material to be exclusively that material or "all" of the same material.

Regarding quantity, nowhere in the document did Arrotin agree to purchase "all" of the materials that Wilmington procured. Accordingly, these facts are distinguishable from those in *American Original Corp. v. Legend, Inc.*, 652 F.Supp. 962, 964 (D.Del.1986), in which the parties agreed that the plaintiff would purchase and the defendant would sell " 'all surf clams'

*caught by the defendants' vessels* in certain waters." (Emphasis added). Further, Arrotin simply indicated that was "pleased to purchase" the materials "available for sale." *Id.* The document then listed the materials, for example "ALL HDPE injection grade any color regrind." App. p. 87. No minimum, maximum, or other quantities were mentioned in the document. In other words, Arrotin indicated that it was willing to purchase what Wilmington was willing to sell. Also, there is no language indicating that Wilmington was required to sell exclusively to Arrotin. Therefore, it is neither an output contract nor an "exclusive dealing" contract as described in Indiana Code Section 26–1–2–306.

Finally, because Wilmington could sell to Arrotin as much or as little of the plastics as it wanted, the agreement was illusory. *See Indiana–American Water Co., Inc. v. Town of Seelyville*, 698 N.E.2d 1255, 1260 (Ind.Ct.App.1998) (observing that an indefinite quantities contract, without at least the requirement that the buyer purchase a guaranteed minimum quantity from the seller, is illusory and unenforceable). This illusory agreement is not ambiguous, and there are no issues of fact to be determined by the trier of fact. Because Wilmington was not required to sell a certain quantity (or everything that it acquired) to Arrotin, Wilmington did not breach the agreement by declining to sell more plastics to Arrotin.

### Conclusion

There are no genuine issues of material fact, and Wilmington has established that

---

1. Indiana Code Section 26–1–2–306 provides:
 (1) A term which measures the quantity by the output of the seller or the requirements of the buyer means such actual output or requirements as may occur in good faith, except that no quantity unreasonably disproportionate to any stated estimate or in the absence of a stated estimate to any normal or otherwise comparable prior output or requirements may be tendered or demanded.
 (2) A lawful agreement by either the seller or the buyer for exclusive dealing in the kind of goods concerned imposes unless otherwise agreed an obligation by the seller to use best efforts to supply the goods and by the buyer to use best efforts to promote their sale.

it is entitled to judgment as a matter of law. Thus, the trial court properly granted Wilmington's motion for summary judgment and denied Arrotin's cross-motion for summary judgment. We affirm.

Affirmed.

NAJAM, J., and RILEY, J., concur.