**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANT:

**JOHN A. KRAFT**
**JENNIFER KRAFT KUCHLE**
Young, Lind, Endres & Kraft
New Albany, Indiana

ATTORNEY FOR APPELLEE:

**C. GREGORY FIFER**
Applegate Fifer Pulliam LLC
Jeffersonville, Indiana

FILED

Feb 15 2013, 9:19 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| PIE KITCHEN, LLC, d/b/a HOMEMADE ICE CREAM AND PIE KITCHEN, | ) ) ) |
| Appellant-Defendant, | ) ) |
| vs. | ) ) No. 10A01-1207-CC-322 ) |
| MERCHANT, LLC, | ) ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE CLARK CIRCUIT COURT
The Honorable Steven M. Fleece, Senior Judge
Cause No. 10C02-1109-CC-1175

**February 15, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Pie Kitchen, LLC, d/b/a Homemade Ice Cream and Pie Kitchen ("Pie Kitchen") and Chalfant Industries, Inc. ("Chalfant"), executed a letter of intent ("LOI") in which Chalfant would lease commercial space to Pie Kitchen to use as a restaurant. The LOI set forth terms that were later incorporated into the lease. Six months after the parties executed the lease, Chalfant sold the shopping center to Merchant, LLC ("Merchant"), and assigned to it the commercial leases of the shopping center's tenants.

A contract dispute later arose between Merchant and Pie Kitchen as to whether a five-percent annual cap on additional rent increases included Pie Kitchen's pro rata share of real estate taxes on the shopping center. Claiming that the taxes were subject to the five-percent cap, Pie Kitchen paid the taxes commensurate with the cap. Claiming that the cap did not include real estate taxes, Merchant filed an action against Pie Kitchen for unpaid rent in the amount by which the taxes exceeded the cap. Both parties sought summary judgment. The trial court interpreted the lease as excluding the taxes from the five-percent cap and granted summary judgment in favor of Merchant, awarding Merchant over $48,000 in damages and interest.

Pie Kitchen appeals the summary judgment order, claiming that the trial court erroneously construed the lease and LOI as excluding the real estate taxes from the five-percent cap. Finding no error, we affirm.

**Facts and Procedural History**

On October 20, 2006, Chalfant and Pie Kitchen executed an LOI concerning Pie Kitchen's leasing of certain commercial space ("the Premises") in Chalfant's shopping center. The LOI states in pertinent part as follows:

> Taxes, Insurance and CAM:
>
> Tenant shall pay its pro rata share of real estate taxes and insurance based on the Tenant's square footage divided by the total gross leasable area of the center. Tenant shall be responsible for its pro rata share of Common Area Maintenance charges, taxes and insurance as set forth in the Lease as "Additional Rent". Common Area Maintenance, taxes and insurance charges for the "Base Year" shall not exceed $2.00 per square foot. All Common Area Maintenance, taxes and insurance shall be billed to the Tenant at the cost the Landlord was charged for them. The "Base Year" will be established on January 1st, 2007. After the "Base Year", additional Rent (CAM) increases shall be capped at 5% annually over the "Base Year". Landlord is responsible for outside of building including but not limited to, common areas, roofs, awnings, windows and walkways. Landlord must present proof of CAM expenses before the "Base Year" begins and each year of the lease thereafter. All CAM expenses must be passed to the Tenant at the actual cost of the maintenance charge based on the percentage of space used for the center. Management fees may only be included as part of the CAM.
>
> ….
>
> Upon the signed acceptance of this Letter of Intent, this document shall become a binding agreement and an obligation to the Landlord to provide a valid and agreeable Lease meeting the terms and conditions of this LOI, within 15 working days. The Lease shall not negate any conditions and or terms included herein, and conditions normally found in a commercial lease. Landlord and Tenant reserves the right to correct or adjust any errors included herein. The LOI shall remain a part of the lease as Exhibit: "LOI".

Appellant's App. at 25-26, 29.

The lease, executed by Chalfant and Pie Kitchen on November 20, 2006, states in pertinent part as follows:

3

## ARTICLE 5 <u>ADDITIONAL RENT FOR COMMON AREA EXPENSES</u>

Tenant shall pay as additional rent, "Tenant's pro rata share" of all operating costs and expenses incurred by Landlord for the property and improvements known as Lowe's Center.  "Tenant's pro rata share" of all additional rent shall be computed on the basis that the total number of square feet of the gross floor area in the Tenant's premises, be [sic] 2,380 square feet, bears to the total number of the gross rentable square feet of the building, being 40,000 square feet for a pro rata percentage of 6%.  These operating costs and expenses shall include:  All property taxes and licenses accessed by any governmental unit; all insurance premiums for liability, fire, and extended coverage with respect to the building and improvements; all common area utilities for lighting, parking and driveway lighting, electricity or gas for operating any equipment deemed as common area equipment, such as signs, pumps, etc., but shall not include any special utility usage for the sole benefit of any one tenant such as a sign or etc.; all maintenance and operating expenses for the lawn, parking, and driveway facilities including gardening, landscaping, moving, management fees and repairing asphalt, sealing, line stripping, removal of snow, ice, trash, rubbish and refuse, all maintenance and operating costs for repairing and repainting the building and common areas.

All expenses for garbage collection unless it is deemed more practical for each Tenant or any one Tenant to provide this service for themselves, then such Tenant or all Tenants will provide for their own collection, and their "pro rata share" for such costs shall be exempted from Additional Rent. OPERATING COSTS AND EXPENSES SHALL NOT INCLUDE:  Cost of any capital improvement made after the completion of the building, unless capital improvement shall constitute a substantial labor or cost saving device or operation in which case Operating Expenses in each year shall continue to include the expenses which would have been incurred if said capital improvement had not been made; expenses for painting, redecorating, or other work performed for the other tenants in the building; expenses for repairs or other work occasioned by fire, windstorm or other insurable casualty; expenses incurred in leasing or procuring new tenants including lease commissions advertising expenses and expenses of renovating space for new tenants; legal expenses incurred in enforcing the terms of any lease, interest or amortization payment of any mortgages.  Landlord and Tenant agree to fix additional rent for Common Area Maintenance in an amount not to exceed $2.00 per square foot for Base Lease Year 1.

ARTICLE 6 <u>PAYMENT OF ADDITIONAL RENT FOR COMMON AREA EXPENSES</u>

For each lease year and partial lease year, the additional rental provided for in Article 6 shall be paid by Tenant in monthly installments, in advance, on the first day of each calendar month. The amount for additional rent for the first lease year shall be $4,760.00 annually paid in monthly installments of $396.67. If the total amount by Tenant under this Article for 2004 or any future year be less than the actual amount paid by Landlord for the expenses referred to in Article 5, then Landlord shall furnish Tenant with a detailed statement of the actual amount of Tenant's proportionate share of such costs and expenses for such period. Tenant shall pay to Landlord the deficiency between the amount paid by Tenant and the amount due within thirty (30) days after the furnishing of each statement. Landlord shall then, based on the preceding years' experience, increase the monthly additional rent paid by Tenant, Tenant's proportionate share of such deficiency divided by twelve. Landlord grants Tenant the right to review Landlord's records relating to said Center for the purpose of confirming actual expenses annually. Exclusive of any increase in property taxes, Landlord and Tenant agree that additional CAM increases shall be capped at 5% annually over the "Base Year".

….

17.9 <u>Entire Agreement</u>: This lease, the attached Letter of Intent, and any guaranty, riders or exhibits attached hereto and forming a part hereof, set forth all the promises, agreements, and conditions and understandings between Landlord and Tenant, or Tenant's agent, relative to the leasing of the Premises, and there are not other promises, agreements, conditions or understandings, either oral or written, between them other than those herein set forth.

*Id*. at 18-19.

In the spring of 2007, Chalfant sold the shopping Center to Merchant. As part of the sale, Chalfant assigned Pie Kitchen's lease to Merchant, and Merchant assumed the lease. A dispute arose between Pie Kitchen and Merchant when Merchant attempted to collect from Pie Kitchen a proportionate share of real estate taxes that exceeded the five-percent cap. Pie Kitchen refused to pay the excess, claiming that the real estate taxes were included within that cap.

Merchant filed a contract action against Pie Kitchen, seeking eviction and possession as well as damages for the unpaid rent representing Pie Kitchen's excess pro rata tax bills from 2009 to the date of judgment. Pie Kitchen filed a counterclaim for damages against Merchant. Both parties filed motions for summary judgment. After a hearing, the trial court granted summary judgment in favor of Merchant for $48,523.20 in damages and issued contingent orders of eviction and possession. Pie Kitchen filed a motion to correct error, which the trial court denied. Pie Kitchen now appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

Pie Kitchen asserts that the trial court erred in granting Merchant's motion for summary judgment. We review the trial court's decision to grant or deny summary judgment using the same standard as the trial court. *Worman Enters., Inc. v. Boone Cnty. Solid Waste Mgmt. Dist.*, 805 N.E.2d 369, 373 (Ind. 2004). A motion for summary judgment is properly granted only when the pleadings and designated evidence reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Bank of New York v. Nally*, 820 N.E.2d 644, 648 (Ind. 2005). In determining whether issues of material fact exist, we must accept as true those facts established by evidence favoring the nonmoving party and resolve all doubts against the moving party. *Id*.

Indiana courts have long recognized the contractual nature of leases and applicability of contract law to leases. *Stewart v. TT Comm'l One, LLC*, 911 N.E.2d 51, 55 (Ind. Ct. App.

6

2009), *trans. denied*. We construe a lease in the same manner as any other contract. *T-3 Martinsville, LLC v. US Holding*, LLC, 911 N.E.2d 100, 111 (Ind. Ct. App. 2009), *clarified on reh'g*, 916 N.E.2d 205, *trans. denied* (2010). The construction of a written contract's terms is purely a question of law, which we review de novo. *Id.*

> When construing the meaning of a contract, our primary task is to determine and effectuate the intent of the parties. First, we must determine whether the language of the contract is ambiguous. The unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts. If the language of the instrument is unambiguous, the parties' intent will be determined from the four corners of the contract. If, on the other hand, a contract is ambiguous, its meaning must be determined by examining extrinsic evidence and its construction is a matter for the fact-finder. When interpreting a written contract, we attempt to determine the intent of the parties at the time the contract was made. We do this by examining the language used in the instrument to express their rights and duties. We read the contract as a whole and will attempt to construe the contractual language so as not to render any words, phrases, or terms ineffective or meaningless. We must accept an interpretation of the contract that harmonizes its provisions, rather than one that places the provisions in conflict.

*Id.* (citation omitted). "If an ambiguity arises because of the language used in the contract and not because of extrinsic facts, its construction is purely a question of law to be determined by the trial court." *Bicknell Minerals, Inc. v. Tilly*, 570 N.E.2d 1307, 1310 (Ind. Ct. App. 1991), *trans. denied* (1992). The mere fact that the parties disagree as to the proper interpretation of a contract's terms does not render the terms ambiguous. *Arrotin Plastic Materials of Ind. v. Wilmington Paper Corp.*, 865 N.E.2d 1039, 1041 (Ind. Ct. App. 2007). Instead, "[a] contract is ambiguous only where a reasonable person could find its terms susceptible to more than one interpretation." *Id.* (citation omitted).

7

Here, the contract indisputably comprises both the lease and the LOI.[1] In examining the language of the contract as a whole, so as not to render any words, phrases, or terms ineffective or meaningless, we note first the closing language in Article 6 of the lease, which states, "*Exclusive of any increase in property taxes*, Landlord and Tenant agree that additional CAM increases shall be capped at 5% annually over the 'Base Year.'" *Id*. at 19 (emphasis added). Pie Kitchen asserts that such language cannot be harmonized with the language of the LOI pertaining to the five-percent cap on rent increases and that it violates the term of the LOI that states, "The lease shall not negate any conditions and or terms included herein, and conditions normally found in a commercial lease." *Id*. at 29.

We disagree. With respect to the cap on "Additional Rent" during the first year of the lease, the section of the LOI titled "*Taxes*, Insurance *and CAM*" plainly states, "Common Area Maintenance, *taxes* and insurance charges for the 'Base Year' shall not exceed $2.00 per square foot." *Id*. at 25 (emphases added). With respect to all subsequent years, the LOI lists only common area maintenance, stating, "After the 'Base Year', additional Rent (*CAM*) increases shall be capped at 5% annually over the 'Base Year'." *Id*. at 26 (emphasis added). Thus, taxes are clearly separate from CAM, and only CAM increases are capped at five percent.[2] As such, we conclude that the lease did not negate the terms of the LOI by excluding property taxes from the five-percent cap. Based on the foregoing, we conclude

---

[1] We note that the parties to the original LOI and lease were Pie Kitchen and Chalfant and that Merchant later assumed the lease as an assignee when it purchased the shopping center from Chalfant.

[2] The inclusion or exclusion of insurance is not an issue in this appeal.

that the trial court did not err in granting summary judgment in favor of Merchant.

Accordingly, we affirm.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.