Edward KESSEL and Margaret Kessel, Appellants–Defendants,

v.

STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, Appellee–Plaintiff.

No. 02A03–0607–CV–307.

Court of Appeals of Indiana.

Aug. 6, 2007.

---

Travis S. Friend, Frank J. Gray, Gray & Friend, LLP, Fort Wayne, IN, Attorneys for Appellants.

Thomas R. Haley, III, Geoffrey C. Lambert, Jennings Taylor Wheeler & Haley, P.C., Carmel, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Edward and Margaret Kessel appeal the trial court's grant of summary judgment in favor of State Automobile Mutual Insurance Company ("State Auto"). We affirm.

### Issue

The Kessels raise two issues, which we consolidate and restate as whether the trial court properly concluded that State Auto is not required to provide coverage to the Kessels.

### Facts

Beginning in 2002, the Kessels leased a barn on their property to Deborah Lapham for $1500.00 per month. From the barn, Lapham operated and maintained a horse boarding and riding business, Elan Stables. Lapham maintained a professional and general liability insurance policy for her business. The Kessels' home was located on the same property as the barn, and from April 20, 2003 to April 20, 2004, the Kessels maintained a homeowner's insurance policy with State Auto.

Jessica Howell paid Lapham to board a horse at Elan Stables.

The Kessels owned a dog that would run loose on the property, including the Elan Stables. Although the Kessels offered to restrain their dog, Lapham encouraged them to allow the dog to run loose and to stay in the barn because she felt secure with the dog being at Elan Stables. Howell first met the dog when she began frequenting the Elan Stables in 2000 and would often see the dog at the barn where he had a run of the place. Howell also witnessed the dog sleeping in the barn in the office that Lapham used that also [doubled] as a tack room for the stables' clients. The dog would often greet Howell at her car when she arrived at Elan Stables and Howell would often feed the dog. However, on February 23, 2004, when Howell had finished riding her horse she saw the dog shaking as she was leaving. She tried to get the dog into the office where he slept, but he did not move. When Howell attempted to place a towel over

the dog to cover him up because she thought he was cold, she was bitten. App. p. 13.

On October 29, 2004, Howell filed a complaint against Elan Stables, Lapham, and the Kessels alleging that they negligently failed to warn her that the dog was a dangerous breed, failed to warn her of his dangerous characteristics, failed to keep the dog restrained, and failed to keep the dog from biting Howell's face. On December 20, 2004, State Auto filed a complaint for declaratory judgment regarding its duty to defend and indemnify the Kessels against Howell's complaint.

On December 28, 2005, State Auto moved for summary judgment against the Kessels on its declaratory judgment complaint. On February 28, 2006, the Kessels filed a response in opposition to State Auto's motion for summary judgment and a cross-motion for summary judgment. On March 10, 2006, State Auto filed a reply brief and a response in opposition to the Kessels' motion for summary judgment. After a hearing, the trial court granted State Auto's motion for summary judgment and denied the Kessels' cross-motion for summary judgment. The Kessels now appeal the trial court's granting of State Auto's motion for summary judgment.

## Analysis

When reviewing the propriety of a ruling on a motion for summary judgment, we apply the same standard as the trial court. *See Atlantic Coast Airlines v. Cook,* 857 N.E.2d 989, 994 (Ind.2006). A party seeking summary judgment must show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Cook,* 857 N.E.2d at 994. Our review of a summary judgment motion is limited to the materials designated to the trial court. *Cook,* 857 N.E.2d at

994. The trial court accepts as true those facts alleged by the nonmoving party, construes the evidence in favor of the nonmoving party, and resolves all doubts against the moving party. *Id.* at 994–95. In the summary judgment context, we are not bound by the trial court's findings and conclusions. *Knowledge A–Z, Inc. v. Sentry Ins.,* 857 N.E.2d 411, 419 (Ind.Ct.App. 2006), *trans. denied.* "They merely aid our review by providing us with a statement of reasons for the trial court's actions." *Id.*

Generally, the interpretation of an insurance policy presents a question of law and is appropriate for summary judgment. *Cinergy Corp. v. Associated Elec. & Gas Ins. Services, Ltd.,* 865 N.E.2d 571, 574 (Ind.2007). If the terms of a written contract are ambiguous, however, the trier of fact must ascertain the facts necessary to construe the contract. *Arrotin Plastic Materials of Indiana v. Wilmington Paper Corp.,* 865 N.E.2d 1039, 1041 (Ind.Ct. App.2007). Thus, when summary judgment is granted based on the construction of a written contract, the trial court has either determined as a matter of law that the contract is not ambiguous, or that any ambiguity can be resolved without the aid of a factual determination. *Id.*

"On appeal, we apply the same standard of review as the trial court, that is, unless the terms of the contract are ambiguous, they will be given their plain and ordinary meaning." *Id.* When the terms of a contract are clear and unambiguous, they are conclusive. *Id.* We will not construe the contract or look to extrinsic evidence, but will merely apply the contractual provisions. *Id.* A contract is not ambiguous merely because the parties disagree as to the proper interpretation of its terms. *Id.* A contract is ambiguous only where a reasonable person could find the

terms are susceptible to more than one interpretation. *Id.*

The Kessels argue that the trial court improperly granted summary judgment in favor of State Auto based on the business exclusion of the homeowner's policy because the policy is ambiguous. The language at issue provides:

Section II—Exclusions

\*   \*   \*   \*   \*   \*

E.  Coverage E—personal liability and Coverage F—Medical Payments to Others

Coverages E and F do not apply to the following:

\*   \*   \*   \*   \*   \*

2.  "Business"

a.  "Bodily injury" or "property damage" *arising out of or in connection with a "business"* conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

This Exclusion E.2. applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

b.  This Exclusion E.2. does not apply to:

(1) The rental or holding for rental of an "insured location";

(a) On an occasional basis if used only as a residence;

(b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(c) In part, as an office, school, studio or private garage; and

(2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees. . . .

App. pp. 215–17 (emphasis added). The policy includes the following definition:

3.  "Business" means:

a.  A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

b.  Any other activity engaged in for money or other compensation except the following:

(1) One or more activities, not described in (2) through (4) below, for which no "insured" receives more than $2,000 in total compensation for the twelve months before the beginning of the policy period;

(2) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

(3) Providing home day care services for which no compensation is received other than the mutual exchange of such services; or

(4) The rendering of home day care services to a relative of an "insured."

*Id.* at 201. It is undisputed that the barn was located on an "insured location" and that the Kessels were the "insured."

The Kessels argue that summary judgment was improper because this business exclusion language is subject to two interpretations. Specifically, they assert the issue is with the "arising out of or in connection with a 'business'" language in the policy's exclusion. *Id.* at 216. The Kessels first point to State Auto's interpretation, "that the business exclusion applies in any circumstance where an injured

party is on the premises as a result of the operation of a 'business[.]'" Appellants' Br. p. 15. They then argue that their interpretation, requiring "a causal connection between the injury and the premises," is equally plausible. Appellants' Br. p. 15. They urge, "Howell was not on the premises in connection with any business of the Kessels. The Kessels were not the business inviter of Howell and secondly had no involvement or responsibility whatsoever in Latham's operation." *Id.* at 18.

State Auto responds that summary judgment was proper because, by leasing the barn to Lapham for $1500.00 per month and allowing her to operate the stables from there, the Kessels were engaged in business conduct, and that the dog bite occurred in connection with that business. We agree with State Auto. The contract is not ambiguous because it is not susceptible to more than one reasonable interpretation.

In support of their respective arguments, the parties cite to several cases from other jurisdictions interpreting similar language under a variety of different circumstances. We find the reasoning in *Nationwide Mutual Fire Insurance Co. v. Nunn*, 114 N.C.App. 604, 442 S.E.2d 340, 344 (1994) persuasive. In that case, the Nunns hosted a wedding reception at their bed and breakfast. After the reception ended, approximately ten people remained and requested permission to stay on the premises longer. Geraldine Nunn gave them permission and, three hours later, she asked these remaining guests to leave. A dog belonging to Geraldine's brother bit one of these guests, McKnight, as she left the premises.

On appeal the court was asked to decide whether the business exclusion in the Nunn's homeowner's insurance policy applied. The policy contained language similar to the one at issue today:

Coverage E–Personal Liability and Coverage F–Medical Payments to Others do not apply to bodily injury or property damage: arising out of or in connection with a business engaged in by an insured. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the business.

*Nunn*, 442 S.E.2d at 342. The court noted that the phrase "in connection with" has been held to have a much broader meaning than "arising out of." *Id.* at 343. The court concluded that although the injury may not have "arisen out of" the business it did occur "in connection with" the business. *Id.* The court reasoned:

Although the reception for which McKnight had originally entered the premises ended several hours before the dog bite incident, she cannot be considered a mere private guest of the Nunns, as they suggest. Rather, McKnight's presence on their premises was linked, associated with, and connected to the reception provided in the course of the Nunns' business. Indeed, but for the reception, McKnight would not have been on the premises and the tort claim would not have arisen. We conclude that, given the broad definition of "in connection with," all of the possible proximate causes of McKnight's injury were in connection with the Nunns' business because McKnight's very presence on the premises was in connection with the business.

This case illustrates the purpose of business use exclusions in homeowners insurance policies. When homeowners change the use of their premises from residential to commercial, they incur a significant increase in the risk of tort claims due to the increased public traffic

on the premises. The insurer which issued their homeowners policy should not be expected to underwrite those additional risks without additional consideration. Nor should the company's other premium payers be expected to shoulder the added burden. Rather, the insured should seek an appropriate type of coverage. When the Nunns began operating a commercial establishment, it was their responsibility to purchase adequate insurance for it. We decline to charge their failure to do so to an insurer which specifically contracted to limit its liability.

*Id.* at 344.

We find the Kessels' attempt to distinguish this case based on the inviter/invitee relationship in *Nunn* unavailing. Although the Kessels did not expressly invite Howell onto their property, they implicitly did when they leased the barn to Lapham to run the stables from it. Contrary to the Kessels' assertion that "Howell was not on the premises in connection with any business of the Kessels[,]" Howell was on the insured location only because the Kessels leased the barn to Lapham. Appellants' Br. p. 18. By leasing the barn to Lapham and allowing her to run the stables business, the Kessels opened themselves up to liability above and beyond that associated with mere homeownership. Based on the broad business exclusion and definition of business in the State Auto policy, it is clear that State Auto did not intend to insure the Kessels for incidents occurring "in connection with a 'business' conducted from an 'insured location'. . . ." App. p. 216.

Further, in an attempt to show that the contract is ambiguous, the Kessels point out that Howell's claim is based on failure to exercise reasonable care. They contend that Howell's claim "bears absolutely no relation to the Kessels' leasing of the barn to Lapham." Appellants' Br. p. 13. However, comparing the legal basis upon which Howell seeks relief with the language of the contract is like comparing apples and oranges. The nature of Howell's allegations does not determine whether the plain language of the policy requires State Auto to defend and indemnify the Kessels. It is the plain language of the policy that controls State Auto's obligations to the Kessels. Because the Kessels leased the barn to Lapham and she ran a business from the barn, injuries connected therewith are excluded from coverage.

Likewise, even if, as the Kessels assert, "Howell's claims against the Kessels would be the same whether her injury occurred on property which was leased to Lapham, or on premises not owned by the Kessels at all[,]" State Auto's liability to the Kessels is not the same. *Id.* at 19. Although State Auto may have been required to defend and indemnify the Kessels if their dog bit someone under different circumstances, State Auto did not agree to insure the Kessels against injuries connected with a business conducted from an insured location or engaged in by an insured. Moreover, the Kessels' assertion that the only relationship between the Kessels and Howell was the fact that the Kessels owned the dog in question is overbroad. The Kessels had a relationship with Howell because they leased a portion of the insured location to Lapham for the purpose of Lapham's business operations.

The insurance contract is unambiguous. Because Howell's injuries occurred in connection with the business conducted from an insured location, State Auto is not required to defend and indemnify the Kessels under the terms of the policy.

The Kessels also argue that by granting summary judgment in favor of State Auto, the trial court improperly weighed evidence. Although they seem to concede

that the facts of this case are not in dispute, they argue, "the trial court had to draw an inference and weigh the evidence between two (2) opposite views to determine that the presence of the dog and the dog bite injury occurred in connection with a business to exclude coverage." Appellants' Br. p. 21. To the contrary, however, the trial court did not weigh the evidence; it interpreted the contract as a matter of law and applied the undisputed facts to that interpretation. The trial court properly granted summary judgment in favor of State Auto.

### Conclusion

The trial court properly granted summary judgment in favor of State Auto because Howell was injured in connection with the Kessels leasing to Lapham the barn from which she operated a business. We affirm.

Affirmed.

NAJAM, J., and RILEY, J., concur.