**Joseph GUZIK, Appellant–Plaintiff,**

v.

**TOWN OF ST. JOHN, Indiana, and Town of St. John Indiana Metropolitan Police Commission, Appellees–Defendants.**

No. 37A03–0701–CV–46.

Court of Appeals of Indiana.

Oct. 22, 2007.

Rehearing Denied Jan. 3, 2008.

Kenneth D. Reed, Abrahamson, Reed & Bilse, Hammond, IN, Attorney for Appellant.

Bruce P. Clark, Stacy J. Vasilak, Brian D. Larson, Bruce P. Clark & Associates, Munster, IN, Attorneys for Appellees.

## OPINION

BAKER, Chief Judge.

Appellant-plaintiff Joseph Guzik appeals the trial court's grant of summary judgment in favor of appellees-defendants Town of St. John (the Town), and Town of St. John Metropolitan Police Commission (Police Commission) with regard to his claim for a declaratory judgment and injunctive relief, which stemmed from his allegedly coerced resignation as the Town's police chief. Specifically, Guzik argues that the trial court erred in striking portions of his affidavit that he submitted

in opposition to the Town and Police Commission's motion for summary judgment. Guzik further contends that there were numerous genuine issues of material fact regarding his purported property rights and due process rights as the police chief and that the trial court erred in deciding as a matter of law that it was immaterial whether Guzik's resignation as Chief of Police was wrongfully coerced. Guzik also challenges the legality of the meeting that was conducted regarding his employment status.

The Town and Police Commission cross-appeal, claiming that the trial court erred in denying their motion to strike additional paragraphs of Guzik's affidavit and in denying the portion of the motion for summary judgment regarding Guzik's request for the return of his personal property.

We conclude that the trial court properly ordered various portions of Guzik's affidavit to be stricken from the record. Additionally, while we find that the trial court properly granted the Town and Police Commission's motion for summary judgment, we further conclude that the motion should also have been granted with regard to Guzik's request for the return of his property. Thus, we affirm in part, reverse in part, and remand this cause to the trial court with instructions that it enter final judgment for the Town and Police Commission as to Guzik's request for the return of his personal property.[1]

## FACTS

In 1994, the Town hired forty-four-year-old Guzik to serve as its police chief. Before that appointment, Guzik had never served as a police officer for the Town. However, Guzik had previously been a police officer with the Merrillville Police Department.

On March 19, 2004, the Police Commission held an executive session, which Guzik attended. During the meeting, Guzik was presented with a list of accusations concerning his alleged misconduct as police chief and was asked to resign. William Dodaro, the Chairman of the Police Commission who was appointed in January 2004, had prepared the list of accusations against Guzik based on his personal observations and conversations with others. The allegations included lying to the Police Commission, submitting misrepresented timesheets, falsifying a year-end report, and failing to properly investigate certain incidents that occurred in the town.

After reviewing the accusations, Guzik agreed to resign, asserting that his decision was designed to avoid the embarrassment that would likely result from a full investigation. Guzik also signed a letter of resignation because the Commissioners no longer wanted him to be the police chief. Indeed, Guzik stated at the meeting: "Apparently, you want me gone. I'll sign the letter, and I'm out of here." Appellant's App. p. 158. Guzik was allegedly informed that, should he refuse to resign, the written accusations would be made public.

However, Ron Vale, a police commissioner who was present at the meeting, disagreed with Guzik's assertions, stating that no threats to release the accusations to the press had been made. Rather, Dodaro and Vale claimed that if Guzik had not resigned, the Police Commission would have conducted a further investigation into his performance as police chief. After signing the resignation letter, Guzik was handed another document, which stated

---

1. In light of this decision, we need not address the Town and Police Commission's arguments that the trial court should have stricken additional portions of Guzik's affidavit.

that the accusations would remain confidential.

Thereafter, a special public meeting was held to discuss Guzik's resignation, and on March 25, 2004, the Town Council accepted his resignation. The following day, the Police Commissioners also accepted Guzik's resignation and, consistent with the recommendations of the public access counselor, set forth the events leading up to the same.

Following the resignation, Guzik cleaned out his office and discovered that certain items had not been returned to him including a computer disk that contained the Lake County Police Chief Association records of its checking account, disks that contained a Powerpoint presentation that he used to teach officers at the Northwest Indiana Training Center, a personal diary of incidents that occurred at the police department, several micro audio tapes containing confidential information about a personal matter, resume paper, a file folder containing personal information, the manual for his scanner, training programs located in a file cabinet next to his desk, and some receipts for expenses incurred while performing his duties for the Tobacco Retail Inspection Program (TRIP). Guzik also alleged that the frequencies from his scanner were erased and that he was not permitted to enter the vehicle that he drove as chief to erase his home garage door code. However, sometime later in 2004 after Guzik resigned, the floppy disks containing the Northwest Training Center presentations were returned to his home by a St. John Police Officer. It was also determined that Guzik's personal diary of incidents that occurred at the police department may not have been recorded on a disk, but instead was on a computer hard drive. Finally, the resume paper was returned to Guzik.

On March 31, 2004, Guzik filed his complaint for declaratory judgment and injunctive relief against the Town and the Police Commission, alleging that his resignation was coerced and extorted, that he had a protected contractual property right as a police officer with the Town, and that his due process rights had been violated. Guzik also requested that the Town and Police Commission return the various items of personal property to him.

Thereafter, on October 13, 2006, the Town and the Police Commission filed a motion for summary judgment, claiming that they were entitled to judgment as a matter of law because Guzik voluntarily resigned his position as police chief. Therefore, the Town and the Police Commission maintained that Guzik did not have a protected property interest in his position as police chief and was not entitled to due process rights with regard to his resignation.

The Town and Police Commission also maintained, contrary to Guzik's position, that there was no violation of Indiana's Open Door Law[2] when the meetings regarding the resignation were conducted. Specifically, the Town and Police Commission asserted that the Town's failure to "check the proper box on the Notice for the March 19, 2004, Executive Session was an inadvertent oversight and, at most, constitutes a very minor or technical violation." Appellant's App. p. 270. Moreover, they contended that the minor violation was later cured in the March 19, 2004, Minutes, which were made available to the public, and again at the "Special Meeting" that was held on March 26, 2004. *Id.* Finally, the Town and Police Commission argued that they were entitled to summary judgment because all of Guzik's items of

2. Ind.Code § 5–14–1.5–1 et seq.

personal property had been returned to him and the property currently in their possession was not Guzik's.

At a hearing on the motion for summary judgment, the trial court entered an order striking certain portions of Guzik's affidavit. The trial court also granted St. John's motion for summary judgment in part and denied it in part. The trial court's findings and order provided as follows:

The Court having reviewed the Plaintiff's request before this Court for declaratory judgment finds that the Plaintiff requested that this Court find that he was a police officer, distinct from his status as police chief, and therefore has a protected, contractual right subject to the due process guidelines of IC 36–8–3–4.

The Court finds that pursuant to the evidence submitted, the Plaintiff was a police officer with the Merrillville Police Department, but never held a police officer position with the Town of St. John.

Further, the Court finds that when the Plaintiff, Guzik, was hired in 1993 as the police chief for the Town of St. John, he was forty-four (44) years of age and was not eligible to be appointed as a rank and file officer of the police department because he was over the age of thirty-six (36).

Further, there was no record presented to the Court that the Plaintiff had undergone any aptitude, physical agility, or physical examination; and, therefore, he was only eligible to be appointed in the rank of chief under IC 36–8–4–7(b).

Therefore, the Court finds that he was not entitled to be returned to any position with the St. John Police Department as he was not a rank and file officer and therefore not entitled to return to any previous position he may have held with that Department since (1) he did not qualify as a rank and file

officer and (2) he never was a rank and file officer of that Department upon his appointment as Chief of the Town of St. John. Therefore, the Plaintiff was not entitled to a due process hearing.

The Plaintiff, Guzik, has admitted that he did sign his resignation on March 19, 2004, at the executive session held on that date. He has maintained throughout these proceedings that he was coerced and forced into signing said resignation because of certain allegations that the Commission maintained would be made public and an investigation conducted if he did not resign, thereby causing embarrassment to his family. It is also noted that Guzik was not allowed to obtain any legal advice prior to signing the document, and it is undisputed that on the next day Guzik did attempt to withdraw his resignation, which the commission refused to grant.

The majority of the Town Council approved and accepted Guzik's resignation in accordance with IC 36–8–3–4(m).

The Court finds there is a factual dispute as to whether or not certain threats and allegations were made against the Chief at said meeting which resulted in his signing the resignation. The issue then becomes, even if said threats and coercion were used, (1) were they sufficient for this Court to rule that they caused said resignation, and (2) even if they were, did the Council and Commission have the authority to terminate his position even if the Court finds that the resignation was a result of the so-called illegal coercion.

Therefore, the Court having examined IC 36–8–3–4 finds that the Commissioners have the authority to remove a police chief at their pleasure, and the Indiana Constitution states that "when the duration of any office is not provided for by this Constitution, it may be de-

clared by law and if not so declared, such office shall be held during the pleasure of the authority making the appointment. The General Assembly shall not create any office, the tenure of which shall be longer than four (4) years." Section 36–8–9–4(a) provides that "the Police Chief is to be appointed by the Board of Police Commissioners." Accordingly, the Police Chief serves at the pleasure of the Police Commission. Furthermore, Article 15 Section 2 of the Indiana Constitution allows for an officer to be dismissed by the appointing authority without providing due process. Due process protections are only required when a person is deprived of protected life, liberty, or property interests.

If this Court assumes, for the purpose of argument, that the resignation of the Plaintiff was invalid and that the Commissions' acceptance of his resignation was a result of coercion, did the Commission still have the power to terminate the Plaintiff? The Court finds that under Indiana Law, they did have that power to terminate his position and that it is immaterial whether or not he was coerced at the meeting of March 19, 2004.

The Court further finds that Plaintiff was not a rank and file officer with the Town of St. John Police Department, and therefore was not entitled to be returned to a position in the rank and file.

The Court now finds that the argument made by the Plaintiff of his choices of the annuity and/or pension benefits are not material to the Court's decision as to whether or not the Commission had the right to terminate or the fact that he was or was not a rank and file member of the police department.

The last issue which was materially raised by the Plaintiff's cause of action is that the Open Door notices were defective and, therefore, the initial meeting on March 19th was not a valid meeting. The Court finds that the notice published was defective and that defective notice was material and a violation of the Open Door Law. However, the Court finds that even though the meeting of March 19, 2004, did violate that policy, a subsequent special meeting on March 26, 2004 rectified said error and the dismissal of the Chief was verified. The Court finds that meeting was appropriately held.

Therefore, the Court finds that the violation of the Open Door Policy on the meeting of March 19th to be immaterial to this decision.

The remaining issue that is material is the issue of the Plaintiff's personal property as set forth in Exhibit B. The Court finds that it cannot grant summary judgment to the Defendants on that issue since there is a factual dispute as to (1) what was personal property of the Plaintiff in this matter; and (2) what personal property was returned to the Plaintiff.

Therefore, summary judgment as to the issue of the returning of personal property is denied. Summary judgment as to the termination of the Plaintiff in this matter is hereby granted.

Appellant's App. p. 1322–26. Guzik appeals, and the Town and Police Commission cross-appeal.

## DISCUSSION AND DECISION

### I. Standard of Review

When reviewing the propriety of a ruling on a motion for summary judgment, we apply the same standard as the trial court. *Kessel v. State Auto. Mut. Ins. Co.*, 871 N.E.2d 335, 337 (Ind.Ct.App.2007). A par-

ty seeking summary judgment must show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Our review of a summary judgment motion is limited to the materials designated to the trial court. *Kessel*, 871 N.E.2d at 337. The trial court accepts as true those facts alleged by the nonmoving party, construes the evidence in favor of the nonmoving party, and resolves all doubts against the moving party. *Id.* Also, in the summary judgment context, we are not bound by the trial court's findings and conclusions. *Id.* Rather, "they merely aid our review by providing us with a statement of reasons for the trial court's actions." *Id.*

## II. Guzik's Claims

### A. The Affidavit

Guzik first claims that the trial court erred in striking substantial portions of his affidavit that he submitted in opposition to the Town and Police Commission's motion for summary judgment. In essence, Guzik claims that the trial court's ruling was erroneous because "much of the material stricken consisted of relevant facts, supported by both annotation to other designated material in the record." Appellant's Br. p. 19.

In resolving this issue, we first note that Trial Rule 56(C) provides that "An adverse party shall have thirty (30) days after service of the motion to serve a response and any opposing affidavits." Also, in accordance with Trial Rule 56(E):

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.
>
> . . .

The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

 The trial court has broad discretion in ruling on the admissibility of evidence. *Price v. Freeland*, 832 N.E.2d 1036, 1039 (Ind.Ct.App.2005). This discretion extends to ruling on motions to strike affidavits on the ground that they fail to comply with the summary judgment rules. *Id.* In other words, affidavits in support of a motion for summary judgment must present admissible evidence that should follow substantially the same form as though the affiant were giving testimony in court in order to comply with the requirements of Trial Rule 56(E). *Comfax Corp. v. N. Am. Van Lines, Inc.*, 638 N.E.2d 476, 481 (Ind.Ct.App.1994). The requirements of Trial Rule 56(E) are mandatory—therefore, a court considering a motion for summary judgment should disregard inadmissible information contained in supporting or opposing affidavits. *Miller v. Grand Trunk W.R.R.*, 727 N.E.2d 488, 493 n. 4 (Ind.Ct.App.2000).

 Guzik claims that the trial court erred in striking a portion of paragraph seven of his affidavit, which stated that while serving as police chief, the council and police commission "had *full knowledge* of his work schedule, including his part-time employment as and adjunct professor at Indiana University and as a TRIP officer." (Emphasis added). Appellant's App. p. 1124. In our view, Guzik is impermissibly speculating because he cannot have

personal knowledge as to what others actually knew or did not know in this instance. Therefore, the trial court properly struck this portion of the affidavit. *See Coghill v. Badger*, 430 N.E.2d 405, 407 (Ind.Ct.App.1982) (observing that conclusory statements of fact not based on personal knowledge are properly stricken from the affidavit).

■ The trial court also struck paragraph nine of the affidavit, where Guzik averred that "everything [he] did in connection with his job as Chief was fully open and known to all Council and Commission persons, and was never the subject of any question, complaint, rule or effort at resolution or change." Appellant's App. p. 1125. These statements are speculative because Guzik cannot know what members of the Council and Commission knew or did not know, and Guzik cannot know with certainty whether anyone ever expressed dissatisfaction with his performance. Furthermore, Guzik's statement that everything he did was "fully open" is a conclusory statement. Thus, the trial court properly struck this portion of the affidavit.

■ In paragraph ten of the affidavit, Guzik stated

all of the trouble producing this lawsuit started after the Town general election and the ascension to power of the Citizen's Party. . . . The situation now is that the Town has a police Sergeant who is supervised by a Chief and Police Commission who he hired, and that Sergeant is also President of the Town Council, who hired and appointed both the Chief and the Commission.

*Id.* at 1125. Once again, such a statement is conclusory and merely states Guzik's opinion and interpretation of the facts. Although Guzik might believe that events leading up to the lawsuit began to arise after the election, that belief is an opinion

and not a fact of which Guzik has personal knowledge.

Similarly, while Guzik argues that the portion of paragraph 14(a) involving the "alleged false minutes of the meeting of March 19, 2004," appellant's app. p. 1126, was improperly struck, he failed to set forth any facts that were known to him to support the characterization that the minutes from the meeting were "false." Instead, Guzik speculates and offers an opinion as to what occurred based on his reading of the minutes. Therefore, the trial court properly excluded this statement from the affidavit.

Guzik also claims that the trial court erred in striking various portions of paragraph fifteen of his affidavit, which concerns the deposition of one of the Town's witnesses. In essence, Guzik's statements are argumentative and they are not based on personal knowledge. *Id.* at 1127–29. The statements also contain personal opinions about the witness's testimony, and they amount to legal conclusions. Therefore, the trial court properly struck these statements from the affidavit. *See* Ind. Evidence Rule 704(b) (holding that witnesses may not testify to opinions concerning legal conclusions).

In paragraph 16(b), Guzik avers that he should have been subject to the St. John Police Department's "progressive discipline policy" if he was not a "sworn officer" of the police department. *Id.* at 1131. Again, Guzik's statement constitutes a legal conclusion because it states his opinion as to the legal consequences of whether or not he was a sworn officer of the police department. The remainder of the paragraph sets forth Guzik's opinion about what the police department "should have done," instead of stating facts based on personal knowledge. As a result, the trial

court properly struck this portion of the affidavit.

Finally, in paragraph 16(d), Guzik attempted to set forth another justification for his legal conclusion that the meeting Dodaro attended was "illegal." *Id.* at 1132–33. Again, Guzik's claim amounted to mere speculation, and Guzik stated that he had deduced certain facts by comparing the depositions of other witnesses. This portion of the affidavit also includes impermissible legal conclusions and speculation, as well as mischaracterizations of testimony from various witnesses. *Id.* at 1133. Thus, we conclude that the trial court did not err in striking these portions of Guzik's affidavit.

In sum, the portions of Guzik's affidavit that the trial court struck contained speculation, irrelevant materials, and/or legal conclusions. As a result, we conclude that the trial court did not err in striking these portions of Guzik's affidavit.

### B. Due Process Claim

■ Guzik argues that the trial court's grant of summary judgment for the Town and Police Commission was improper because it erroneously determined that Guzik—as the Chief of Police—could be terminated without any due process rights. In essence, Guzik claims that summary judgment was erroneous because the designated evidence established that there were genuine issues of material fact as to whether his due process rights were violated.

■ In resolving this issue, we note that due process protections are required when an individual is deprived of a protected life, liberty, or property interest. *McIn-*

tosh v. Melroe Co., 729 N.E.2d 972, 976 (Ind.2000).

Pursuant to the Indiana Constitution Article IV, section two:

> When the duration of any office is not provided for by this Constitution, it may be declared by law; and, if not so declared, such office shall be held during the pleasure of the authority making the appointment. But the General Assembly shall not create any office, the tenure of which shall be longer than four years.

In construing this provision, our Supreme Court has determined that a police chief is an "officer" of a municipality for purposes of criminal liability. *State v. Carey*, 241 Ind. 692, 175 N.E.2d 354, 355 (1961). Moreover, the *Carey* court recognized that a police chief is appointed by the mayor and may be removed by the mayor at his pleasure under this article. *Id.* at 357. With regard to the town form of government, the police commissioners appoint the police chief. Ind.Code § 36–8–9–4(a).[3]

Here, Guzik maintains that the various due process protections set forth in Indiana Code section 36–8–3–4(a)–(e), which provide that "rank and file" members of a police or fire department "cannot be demoted or terminated, absent cause and due process proceedings necessary to protect an officer's property and constitutional rights in his job," should also apply to him. Appellant's Br. p. 29–30. In support of his contention, Guzik directs us to Indiana Code section 36–8–9–4(c), which provides that

---

**3.** Specifically, this statute provides that "the board may appoint, subject to the qualifications for employment determined by the board and approved by the town legislative body, as many persons as necessary to serve in the police department of the town. One (1)

person shall be appointed to serve as the police chief. The board may also appoint other employees that are necessary to carry on the work of the police department." I.C. § 36–8–9–4(a).

All persons appointed must be of good moral character and serve only during good behavior. The board constitutes the safety board of the town for purposes of the suspension, demotion, or dismissal of any member of the police department. Proceedings for the suspension, demotion, or dismissal of any member of the police department shall be conducted in the manner prescribed by IC 36–8–3–4. The disciplinary provisions of IC 36–8–3–4.1 also apply to the safety board and the police chief.

Notwithstanding Guzik's claim, our courts have held that Indiana Code section 36–8–3–4 does not grant a police chief a protected property interest in that position. *Olejniczak v. Town of Kouts,* 651 N.E.2d 1197, 1200 (Ind.Ct.App.1995). As the *Olejniczak* court observed, "the chief police officer of a department holds an 'upper level policymaking position' pursuant to the Disciplinary Statute." *Id.* at 1202.

We observe that even though Indiana Code section 36–8–9–4(c) provides that "proceedings for suspension, demotion, or dismissal of any member of the police department shall be conducted in the manner prescribed by Indiana Code section 36–8–3–4," it is apparent that this provision is not intended to apply to upper level policymakers, such as the police chief. Indeed, Indiana Code section 36–8–3–4(m) [4] specifically exempts upper-level policymakers from the procedures set forth in section 36–8–3–4. In essence, this section permits a police chief to be removed from his policymaking position without cause, due process proceedings, or any other protections, aside from allowing return to the position held with the department before

being appointed police chief. Therefore, section 36–8–9–4 does not prevent the Police Commission from exercising its constitutional authority to remove the police chief from office.

Here, the designated evidence establishes that the Commissioners accepted Guzik's resignation on March 26, 2004. Even assuming for the sake of argument that such an action amounted to a termination of Guzik's employment, the Commissioners—as the appointing authority—were authorized to perform the same without adhering to due process requirements. As a result, Guzik's request for declaratory judgment regarding his due process claim, which was premised upon the applicability of Indiana code section 36–8–3–4, was properly denied.

 We similarly reject Guzik's claim that summary judgment was improperly granted for the Town and Police Commission because a genuine issue of material fact remains as to whether his resignation was coerced or the product of duress. Even assuming that Guzik did not simply resign from his position as chief of police, we note that a threat to remove an individual from employment for cause is not duress. *Crabtree v. Lee,* 469 N.E.2d 476, 478 (Ind.Ct.App.1984). Duress has been defined as " 'any unlawful threat or coercion used by a person to induce another to act (or to refrain from acting) in a manner he or she otherwise would not (or would).' " *Evansville v. Conley,* 661 N.E.2d 570, 574 (Ind.Ct.App.1996) (quoting Black's Law Dictionary 504 (6th ed.1990)). The *Conley* court also observed that "mere threats,

---

**4.** "Except as provided in IC 36–5–2–13, the executive may reduce in grade any member of the police or fire department who holds an upper level policy making position. The reduction in grade may be made without adhering to the requirements of subsections (b) through (*l*). However, a member may not be reduced in grade to a rank below that which the member held before the member's appointment to the upper level policy making position."

which fall short of subverting the will, cannot constitute duress." *Id.*

In this case, it is apparent that Guzik's resignation was a result of his dissatisfaction with the choices that were offered to him at the meeting on March 19, 2004. According to his own testimony, Guzik signed the letter of resignation because he did not want to put his family through the ridicule and embarrassment of having to endure an investigation into the accusations that were made against him. Appellant's App. p. 124. Guzik also averred that he resigned because he believed that the Commissioners no longer wanted him to be the police chief. *Id.* at 124.

In our view, presenting Guzik with a list of grievances accompanied by an alleged threat to conduct a more thorough investigation of his conduct does not amount to a coerced resignation. Even under Indiana Code section 36-8-3-4, the Police Commission has the authority to, after providing the member an opportunity for a hearing, "demote, dismiss, reprimand, or suspend" a member of the police department, upon a finding or decision that the member has been or is guilty of: neglect of duty, violation of rules, neglect or disobedience of rules, incapacity, absence without leave, immoral conduct, conduct injurious to the public peace or welfare, conduct unbecoming of an officer, or another breach of discipline. Thus, the Commissioners had the authority to discipline Guzik if the allegations presented were true. Necessarily, such authority includes the ability to further investigate the veracity of the allegations and determine if any disciplinary actions were warranted. Furthermore, if threatening to terminate an individual—absent resignation—is not coercion, it follows that threatening to conduct further investigation into accusations made or, alternatively, creating the impression that Guzik would be fired if he did not resign-

-which are both lawful alternatives-cannot be considered a coerced resignation.

Even so, Guzik maintains that genuine issues of material fact exist in this case because the accusations that were presented to him at the March 19, 2004, meeting were "scurrilous and unfounded." However, the designated evidence revealed that the accusations were based on reliable sources including Dodaro's personal observations and information received from other individuals. Appellant's App. p. 189–90. Other Commissioners—including Vale, who had been a Commissioner since 1988–confirmed the receipt of such complaints. In fact, although Vale had befriended Guzik, he would have fired Guzik as a result of his unacceptable performance as police chief. *Id.* at 201, 209, 211. However, as we have already concluded, because Guzik was an upper level policymaker, he could be removed from his position as police chief without being afforded the due process protections of Indiana Code section 36-8-3-4. As a result, we conclude that the alternatives posed to Guzik at the time of his resignation were lawful alternatives. Therefore, we cannot say that Guzik's resignation was void because of coercion or duress.

Moreover, when considering the above, it is well established that a police officer who voluntarily resigns waives his due process rights under Indiana Code section 36-8-3-4. *See Kimbrell v. City of Lafayette,* 454 N.E.2d 73, 75 (Ind.Ct.App.1983) (holding that the only avenue of relief available to a police officer who voluntarily resigns is re-application and, thus, the officer cannot claim violation of due process rights for a failure to review resignation). More specifically, in *Kimbrell,* this court stated:

The record clearly indicates that Merit Board has no procedure for the review of voluntary resignations of police officers. Since the trial court found [that

Kimbrell] voluntarily resigned, the only avenue of relief available to him is reapplication, not review of his voluntary resignation. [Kimbrell] cannot claim the Merit Board violated his constitutional rights when he has failed to make proper attempt to relief.

*Id.* at 75.

Again, Guzik acknowledged that after he was provided with a list of accusations regarding his conduct as police chief, he chose to resign rather than have the charges of his alleged misconduct publicized. Appellant's App. p. 124. Moreover, the designated evidence establishes that Guzik signed the resignation letter because he believed that the Commissioners no longer wanted him to be the chief of police. Therefore, Guzik's claim that his resignation on March 19, 2004, violated his due process rights fails as a matter of law because Indiana Code section 36–8–3–4 does not provide for the review of his resignation.

### C. Withdrawal of Resignation

■ Notwithstanding the above, Guzik claims that summary judgment was improperly granted to the Town and Police Commission because the designated evidence established that he withdrew his resignation before it was accepted. Hence, Guzik claims that a genuine issue of material fact remained as to whether he was unlawfully terminated from his position.

In addition to our discussion above, we note that pursuant to Indiana Code section 5–8–4–1, Guzik was not entitled to withdraw his resignation once it was tendered:

Whenever any officer, servant or employee of the state of Indiana, or of any board, bureau, commission, department, division, instrumentality or agency thereof, or of any city, town, county, township, or school corporation, or of any board, bureau, commission, depart-

ment, division, instrumentality or agency of any city, town, county, township, or school corporation, shall submit in writing his or her resignation, whether to take effect at once, when accepted, or at some future fixed date, with the proper officer, person or persons or authority of government to receive such resignation, *the person so submitting such written resignation shall have no right to withdraw, rescind, annul or amend such resignation without the consent of the officer, person or persons or authority of government having power by law to fill such vacancy.*

(Emphasis added). Here, neither the Police Commission nor the Town Council consented to Guzik's purported withdrawal of his resignation. Appellant's App. p. 248–49. Thus, Guzik's claim fails.

### D. Commission Meeting

■ Finally, Guzik claims that summary judgment for the Town and Police Commission must be set aside because the meeting held on March 19, 2004, was unlawful. Specifically, Guzik maintains that the town council could not have ratified and accepted the resignation at its public meeting a week later because Guzik had withdrawn his resignation.

Here, Guzik claimed that the notice of the meeting was ineffective to provide him with actual notice of the Commission's intentions at the executive sessions because personnel had inadvertently failed to check the boxes for job performance evaluations and an individual's status as an employee.

The minutes regarding the meeting on March 19, 2004, stated in part that

[i]t is hereby acknowledged that the boxes for job performance evaluations of individual employees and an individual's status as an employee prior to a determination were inadvertently not checked

on the notice of executive session. The only matters discussed at this executive session were information regarding prospective employees, job performance evaluation of individuals, and an individual's status as an employee prior to determination.

Appellant's App. p. 1137.

 The purpose of the Open Door Law is to keep the public fully informed of the government's business. Ind.Code § 5–14–1.5–1. However, the public can legally be excluded from certain meetings, such as executive sessions. I.C. § 5–14–1.5–2(f). We note that executive sessions may be held to receive information concerning an individual's misconduct and discuss the individual's status as an employee and to discuss job performance evaluations of individual employees. Ind.Code § 5–14–1.5–6.1. Moreover, decisions made regarding an individual's employment are appropriate activities for an executive session. *Baker v. Town of Middlebury,* 753 N.E.2d 67, 71 (Ind.Ct.App.2001).

In *Baker,* the Town Marshall was advised at an executive session that he would not be rehired. *Id.* at 69. On appeal, it was determined that the decision not to include the Town Marshall on the list of rehires was not a "final action"[5] and was, therefore, a valid activity at an executive session. *Id.* at 71.

We also note that in accordance with Indiana Code section 5–14–1.5–7:

(d) In determining whether to declare any policy, decision, or final action void, a court shall consider the following factors among other relevant factors:

(1) The extent to which the violation:

(A) affected the substance of the policy, decision, or final action;

(B) denied or impaired access to any meetings that the public had a right to observe and record; and

(C) prevented or impaired public knowledge or understanding of the public's business.

(2) Whether voiding of the policy, decision, or final action is a necessary prerequisite to a substantial reconsideration of the subject matter.

(3) Whether the public interest will be served by voiding the policy, decision, or final action by determining which of the following factors outweighs the other:

(A) The remedial benefits gained by effectuating the public policy of the state declared in section 1 of this chapter.

(B) The prejudice likely to accrue to the public if the policy, decision, or final action is voided, including the extent to which persons have relied upon the validity of the challenged action and the effect declaring the challenged action void would have on them.

(4) Whether the defendant acted in compliance with an informal inquiry response or advisory opinion issued by the public access counselor concerning the violation.

In this case, the Police Commission notified the public of the executive session and prepared minutes that duly noted the omission of the additional subject matter of the meeting. The Police Commission held a subsequent special meeting, at which time it advised the public of the information received and the action that was taken during the executive session on March 19.

In our view, any technical violation of the Open Door Law that resulted from the failure to check the boxes for job performance evaluations and an individual's status

---

**5.** In accordance with Indiana Code section 5–14–1.5–2, a "final action" is a vote by the governing body on any motion, proposal, resolution, rule, regulation, ordinance, or order.

as an employee did not affect the substance of any decisions, policies, or final actions because none were made, established, or taken at that time. Guzik was merely asked to resign, and there was no evidence of deliberations or information-gathering that were conducted at the executive session before the request was made for Guzik's resignation. Moreover, as executive sessions are meetings from which the public is excluded pursuant to Indiana Code section 5–14–1.5–2(f), even if the appropriate boxes had been checked, the public would not have had the right to attend the meeting on March 19, 2004. Thus, we cannot say that any inadvertent omission on the notice prevented or impaired public knowledge or understanding of the public's business. Indeed, the public was apprised of the events of March 19, 2004, in the meeting minutes from the executive session as well as at the special meeting on March 26, 2004.

Similarly, we cannot say that the public interest will be served by voiding the request for Guzik to resign. Pursuant to Indiana Code section 5–14–1.5–2(d), official actions are defined as the receipt of information, deliberations, making recommendations, establishing policy, making decisions, or taking final action. None of these activities occurred at the executive session on March 19, 2004. Moreover, the public was advised of the events at the executive session via the meeting minutes and the subsequent meeting on March 26, 2004. Even more compelling, it is apparent that the public would be severely prejudiced if the request that Guzik resign is declared void. The Town has relied upon Guzik's resignation in selecting and operating under the authority of a new police chief.

In sum, we conclude that any violation of the Open Door Law was cured by the minutes of the March 19, 2004, meeting, and the special meeting that was held on March 26, 2004. As a result, Guzik's claim fails.

### III. The Town and Police Commission's Cross–Appeal[6]

The Town and Police Commission cross-appeal, claiming that the trial court erred in denying the portion of the motion for summary judgment that involved Guzik's request for the return of certain items of personal property. Specifically, the Town and Police Commission claim that the undisputed designated evidence establishes that the only items that Guzik listed in his complaint as belonging to him do not, in fact, belong to Guzik. Thus, the Town and Police Commission contend that the trial court should have granted their motion for summary judgment with regard to this claim.

We note that Guzik testified at his deposition that after he resigned, the computer disks were returned to him. Appellant's App. p. 131. Guzik also testified that his diary of incidents that occurred at the police department may not have been recorded on a disk but, instead, was on the hard drive. *Id.* at 133–34. The resume paper and Guzik's scanner were also returned. *Id.* at 164.

In essence, the only items that Guzik originally listed in his complaint that are still in the Town or Police Commission's possession are the police department's garage door opener, the time sheets, and several micro audiotapes. *Id.* at 247–48. It was established that the garage door opener has been reset and Guzik's home garage door code has been erased from the memory. *Id.* at 247. Moreover, Guzik's time sheets were prepared at the request of—and for the benefit of-the Commission-

---

6. Guzik did not respond to the Town's argu-

ments on cross-appeal in his reply brief.

ers. *Id.* at 248. Finally, the evidence established that the micro audiotapes that are in the Police Commissioners' possession were recorded during an investigation that concerned internal police department matters. *Id.* As a result, these items are the property of the St. John Police Department, and Guzik is not entitled to their return. The record reflects that the remaining items that Guzik listed are not in the Town or Police Commission's possession because they had not taken those items. *Id.* at 247.

Thus, because the items in the Town and or Police Commission's possession are not Guzik's property, he is not entitled to an order requiring their return. Moreover, because neither the Town nor the Police Commission are in possession of the remaining items that Guzik listed in his complaint, an order compelling the return of the same would be of no avail. As a result, we conclude that the trial court should have also granted the Town's motion for summary judgment on Guzik's request for an order compelling the return of his personal property.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions that the trial court enter judgment for the Town and Police Commission with respect to Guzik's request for the return of personal property.

SHARPNACK, J., and RILEY, J., concur.