Patrick A. CLEARY, M.D., and Ball Memorial Hospital, Appellants–Defendants,

v.

Konnie A. MANNING, on her own Behalf and As the Personal Representative of Paul Manning, Deceased, Appellee–Plaintiff.

No. 18A02–0707–CV–599.

Court of Appeals of Indiana.

April 14, 2008.

Charles E. Herriman, Kyle C. Persinger, Spitzer Herriman Stephenson Holderead Musser & Conner, LLP, Marion, IN, Attorneys for Appellant, Patrick A. Cleary, M.D.

Kelly J. Pitcher Ice Miller, LLP, Indianapolis, IN, Attorney for Appellant, Ball Memorial Hospital.

Michael J. Tosick, Greenfield, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Dr. Patrick Cleary and Ball Memorial Hospital (collectively "the Defendants") appeal the denial of their motion for summary judgment against Konnie Manning. We affirm.

### Issue

The sole issue is whether the trial court properly concluded that Manning could rely on the doctrine of res ipsa loquitur in her medical malpractice action against the Defendants.

### Facts

On March 13, 2002, Paul Manning went to Ball Memorial Hospital ("the Hospital") to undergo surgery to have tumors removed from his neck and ear. Dr. Cleary was the surgeon, and the anesthesiologist was Dr. Ann Caldwell. During the procedure, Dr. Clearly used an electrocautery device known as a Bovie. Dr. Caldwell administered oxygen to Paul by "blowby," which meant that a tube of oxygen was placed near his nose. Surgical drapes separated the space around Paul's face, where the oxygen was administered, from the surgical field.

During the surgery, a spark from the Bovie came into contact with the oxygen and ignited a flash fire. Dr. Cleary saw the flame under the drapes and extending into the operating field. Dr. Caldwell turned off the oxygen, and Dr. Cleary removed the burning surgical drapes from

Paul and threw them onto the floor. Paul suffered burn injuries to his neck and chest from this incident, although their extent is not clear in the present record.

█ In 2004, the Mannings filed a proposed medical malpractice complaint with the Department of Insurance. At some point before the medical review panel issued its opinion in the case, the Mannings settled with Dr. Caldwell and the proposed complaint against her was dismissed.[1] In September 2006, the panel issued its unanimous opinion that both Dr. Cleary and the Hospital met the applicable standard of care in Paul's treatment.

On December 8, 2006, Konnie, on her own behalf and as personal representative of Paul's estate, filed a medical malpractice complaint against Dr. Cleary and the Hospital. On December 12, 2006, the Hospital filed a motion for summary judgment, which Dr. Cleary joined on January 11, 2007. Konnie presented no expert evidence in response to the summary judgment motion, and instead relied upon the doctrine of res ipsa loquitur. On April 18, 2007, the trial court denied summary judgment. It later denied a motion to reconsider, and on June 18, 2007, it certified the denial of the Defendants' summary judgment motion for interlocutory appeal. This court has agreed to accept jurisdiction.

## Analysis

When reviewing a ruling on a motion for summary judgment, we apply the same standard as the trial court. *Kessel v. State Auto. Mut. Ins. Co.*, 871 N.E.2d 335, 337 (Ind.Ct.App.2007). A party moving for summary judgment must show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Kessel*, 871 N.E.2d at 337. We accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmoving party, and resolve all doubts against the moving party. *Kessel*, 871 N.E.2d at 337. In the summary judgment context, we are not bound by a trial court's findings and conclusions, but they may aid our review by providing a statement of reasons for the trial court's actions. *Id.*

█ As recognized by the parties and the trial court, we addressed a nearly identical factual situation to the present case in *Gold v. Ishak*, 720 N.E.2d 1175 (Ind.Ct.App.1999), *trans. denied*. In *Gold*, a surgery patient was administered oxygen through a mask that did not have an airtight seal. The surgery was to be performed, as here, with a Bovie. The patient's head was separated from the operating field and the Bovie by surgical drapes. During the procedure, a spark from the Bovie caused the oxygen mask to

1. Konnie's attorney has filed an affidavit with this court, purporting to be authorized by Indiana Appellate Rule 31, stating that a settlement was reached with Dr. Caldwell and the proposed complaint against her was withdrawn. The Defendants have filed a motion to strike this affidavit because it references evidence that was not part of the designated evidence before the trial court. See *Ratliff v. State*, 741 N.E.2d 424, 427 n. 1 (Ind.Ct.App. 2000) (addressing predecessor to Appellate Rule 31), *trans. denied*. However, we note that at the summary judgment hearing, counsel for Dr. Cleary stated that Dr. Caldwell was no longer part of the case because she had settled with the Mannings. There seems to be no dispute that the reason for Dr. Caldwell's absence as a defendant in this case is because she settled while the case was pending before the medical review panel. Although we could choose to strike the affidavit because it is not in compliance with Appellate Rule 31, we decline to do so, because the basic facts it relates are not in dispute and, in any event, are largely irrelevant to our analysis.

catch fire, resulting in burns to the patient's face and chest.

The patient filed a proposed malpractice complaint against the surgeon, the anesthesiologist, and the hospital. As in this case, a medical review panel found no indication of malpractice. The patient then filed suit against the surgeon, anesthesiologist, and hospital. The trial court granted a motion for judgment on the evidence in favor of the defendants.

We reversed, after undertaking a thorough examination of the res ipsa loquitur doctrine. Because of the striking similarities in the facts, much of what we said in Gold bears repeating today:

> Res ipsa loquitur literally means "the thing speaks for itself." Consequently, the facts or circumstances accompanying an injury may be such as to raise a presumption, or at least permit an inference, of negligence on the part of the defendant. The doctrine of res ipsa loquitur is a rule of evidence which allows an inference of negligence to be drawn from certain surrounding facts. *Vogler v. Dominguez*, 624 N.E.2d 56, 61 (Ind. Ct.App.1993), *reh'g denied, trans. denied.* Application of the doctrine does not in any way depend on the standard of care imposed by law but, rather, depends entirely upon the nature of the occurrence out of which the injury arose. Whether the doctrine applies in any given negligence case is a mixed question of law and fact. The question of law is whether the plaintiff's evidence included all the underlying elements of res ipsa loquitur. We have previously held that "[u]nder the doctrine of res ipsa loquitur, negligence may be inferred where [1] the injuring instrumentality is shown to be under the management or exclusive control of the defendant or his servants and [2] the accident is such as in the ordinary course of

> things does not happen if those who have management of the injuring instrumentality use proper care."

*Vogler,* 624 N.E.2d at 61 (emphasis added). A plaintiff relying upon res ipsa loquitur may show that the event or occurrence was more probably the result of negligence by relying upon common sense and experience or by expert testimony. The plaintiff's burden in this regard is to produce a reasonable showing that the injury was indeed one which would not ordinarily occur in the absence of proper care on the part of those who manage or maintain the instrumentality.

*Gold,* 720 N.E.2d at 1180–81 (citations omitted) (alteration in original).

 With respect to the res ipsa loquitur element of "exclusive control," we noted that it is a broad concept that focuses upon who has the right or power of control and the opportunity to control it at the time of the alleged negligence, rather than actual physical control. *Id.* at 1181. Exclusive control may be shared among multiple defendants if each had a nondelegable duty to use due care. *Id.* To prove exclusive control, a plaintiff is not required to eliminate with certainty all other possible causes and inferences, "but must show either that the injury can be traced to a specific instrumentality or cause for which the defendant was responsible, or that the defendant was responsible for all reasonably probable causes to which the accident could be attributed." *Id.* "[T]his is because proof in a res ipsa loquitur case seldom points to a single specific act or omission; typically, it points to several alternative explanations involving negligence without indicating which of them is more probable than the other." *Id.*

We concluded in *Gold* that the element of exclusive control of the injuring instrumentalities had been met. *Id.* There was

no question that the oxygen and Bovie in combination were the injuring instrumentalities. As for the hospital, it had provided the Bovie; additionally, a nurse and a surgical technologist who were hospital employees were present during the surgery. The surgeon controlled the Bovie, and also had placed the surgical drapes around the patient. The anesthesiologist controlled the oxygen mask. Thus, the patient presented evidence that the Bovie and the oxygen mask were the injuring instrumentalities and that they were under the exclusive control of the defendants at the time of the accident. *Id.* at 1181–82.

As in *Gold,* there is no question here that the Bovie and oxygen delivery in combination were the injuring instrumentalities. However, the Defendants claim *Gold* cannot be applied because unlike in Gold, the anesthesiologist, Dr. Caldwell, is not a party at this time. In other words, Konnie has failed to name in this lawsuit all of the persons who had control over all of the injuring instrumentalities at the time of the accident.

■ We do not believe Dr. Caldwell's absence from the present litigation is enough to allow the Hospital and Dr. Cleary to avoid the application of res ipsa loquitur. Where, as here, there are multiple injuring instrumentalities, res ipsa loquitur may be applied against a defendant who is demonstrated to have had exclusive control over at least one of those instrumentalities. In other words, where a plaintiff presents evidence that a defendant had exclusive control of a key injuring instrumentality, he or she is not required to demonstrate the defendant's

exclusive control over all potential contributing causes of the accident. *Aldana v. School City of East Chicago,* 769 N.E.2d 1201, 1207 (Ind.Ct.App.2002) (citing *New York, Chicago & St. Louis R. Co. v. Henderson,* 237 Ind. 456, 473, 146 N.E.2d 531, 541 (1957)), *trans. denied.*

There is no question that Dr. Cleary was in direct control of one of the injuring instrumentalities, the Bovie, at the time of the fire. The Hospital does not dispute that it apparently supplied the Bovie to Dr. Cleary, or that it controlled the supply of oxygen that Dr. Caldwell used and provided the drapes that were supposed to isolate the oxygen-rich air around Paul's head from the surgical field. This is enough to allow res ipsa loquitur to be invoked against Dr. Cleary and the Hospital, despite Dr. Caldwell's absence from the case.

■ Moreover, we note that application of res ipsa loquitur only allows an inference of negligence and shifts the burden of production to a defendant. *Gold,* 720 N.E.2d at 1182. It is not a conclusive finding of negligence. The Defendants here certainly are free to present evidence and argue to the ultimate fact-finder that they did nothing negligent to cause the fire, and the fact-finder would be entitled to accept such an argument. Furthermore, if in fact Konnie has received a settlement from Dr. Caldwell and a judgment ultimately is entered against Dr. Cleary and the Hospital, they would be entitled to a setoff for the amount of that settlement.[2] "When the actions of multiple defendants cause a single injury to a

2. It used to be the rule in Indiana, under the contributory negligence scheme that still is applicable to medical malpractice actions, that a settlement and release as to one joint tortfeasor automatically acted to release all joint tortfeasors from liability. *See Consolidated Rail Corp. v. Travelers Ins. Cos.,* 466 N.E.2d 709, 712 (Ind.1984). Our supreme court has discarded that rule, both with respect to comparative fault and contributory negligence actions. *See Huffman v. Monroe County Cmty. School Corp.,* 588 N.E.2d 1264, 1266–67 (Ind.1992).

plaintiff, a defendant against whom judgment is rendered at trial is entitled to a setoff against the assessed damages in the amount of any funds the plaintiff received from any settling joint tortfeasor." *Palmer v. Comprehensive Neurologic Serv., P.C.,* 864 N.E.2d 1093, 1100 (Ind.Ct.App. 2007), *trans. denied.*

■ We also address the second requirement of res ipsa loquitur, namely whether there is a reasonable showing that the injury Paul suffered was indeed one that ordinarily would not occur if those who managed or maintained the instrumentality used proper care. *See Gold,* 720 N.E.2d at 1181. This showing can be made either by relying upon common sense and experience or by expert testimony. *Id.* The plaintiff in Gold had presented expert testimony that although the use of an electrocautery unit and supplemental oxygen during a surgery does not itself fall below the standard of care, something clearly went wrong during the surgery for there to have been a fire and it was extremely unusual for there to have been a fire. *Id.* at 1182. We held this was sufficient to establish that the fire was outside the ordinary course of events for those using supplemental oxygen and a Bovie during surgery with proper care. *Id.*

Konnie did not present any expert evidence or testimony regarding fires in the operating room, unlike the plaintiff in *Gold.* However, we also discussed in *Gold* whether a fact finder alternatively could rely on common knowledge to establish res ipsa loquitur in the case, and we answered yes. *Id.* at 1183–84. We noted, "The standard of care [in medical malpractice actions] need not be established by expert opinion when the doctor's conduct was understandable by the jury without extensive technical input." *Id.* at 1183. We concluded such input was not needed, observing, "Common sense tells us that injury to

the patient from a fire in the operating room is not a frequent or expected outcome of surgery." *Id.* Thus, expert testimony was not required "because a fire occurring during surgery where an instrument that emits a spark is used near a source of oxygen is not beyond the realm of the lay person to understand." *Id.* "While mere use of the electrocautery unit combined with the use of supplemental oxygen may not itself fall below the standard of care, it is easily understandable to the common person that careless use of the two could cause a fire and result in bodily injury." *Id.* at 1184.

It is true that our discussion in Gold regarding common knowledge arguably was dictum because it was not necessary to analyze that issue in light of the plaintiff's presentation of expert testimony. *See McVey v. Sargent,* 855 N.E.2d 324, 327 (Ind.Ct.App.2006), *trans. denied.* Still, the fact that the discussion was dictum does not mean it was incorrect. We agree with the *Gold* opinion's reasoning regarding res ipsa loquitur, common knowledge, and fires in the operating room. Under that reasoning, Konnie was not required to present expert testimony that the fire was something that does not happen in the ordinary course of things if proper care is used. A fact finder is entitled to use its common knowledge on this point and res ipsa loquitur may be invoked against the Defendants without the assistance of expert testimony.

## Conclusion

The trial court properly concluded that Konnie could invoke res ipsa loquitur against the Defendants and, therefore, properly denied the Defendants' motion for summary judgment. We affirm.

Affirmed.

SHARPNACK, J., and VAIDIK, J., concur.